<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

| | | |
|---|---|---|
| _____ : | | |
| NOVARTIS PHARMACEUTICALS CORP., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 07-5945 (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BAUSCH & LOMB, INC., | : | |
| | : | |
| Defendant. | : | |
| _____: | | |

<u>GREENAWAY, JR., U.S.D.J.</u>

This matter comes before this Court on a motion to dismiss for failure to state a claim, by

Defendant, Bausch & Lomb, Inc., ("Defendant" or "B&L"), against Plaintiff, Novartis

Pharmaceuticals Corporation ("Plaintiff" or "Novartis"), pursuant to Fed. R. Civ. P. 12(b)(6) and

L. Civ. R. 7.1.  For the following reasons, Defendant's motion to dismiss is granted.

### I.    BACKGROUND

Plaintiff, Novartis Pharmaceuticals Corporation, is a Delaware corporation.  Its principal

place of business is in New Jersey.  Defendant, Bausch & Lomb, Inc., is a New York corporation,

with its principal place of business in New York.

On February 2, 2006, Novartis and B&L entered into a co-promotion agreement (the

"Agreement"), whereby the Novartis sales force would aid in the marketing of B&L's product,

1

Retisert, an ocular implant, to retinal surgeons.  Compl. ¶ 20.  Novartis claims that its sales force was particularly well-suited to market Retisert, because of its existing network of retinal surgeons, previously cultivated in marketing campaigns for other ophthalmology-related products.  Compl. ¶ 8.  The Agreement required Novartis to make a certain minimum number of sales calls and sales of the Retisert implant, measured on a quarterly basis.[1]  Compl. ¶ 20.  In return, B&L agreed to "pay Novartis $2,000,000, payable on a quarterly basis ... [ and be] responsible for compensating the Novartis sales force in accordance with an incentive plan attached to the Agreement."[2]  Id.

The agreement was intended to run from February 2, 2006, through March 31, 2007.  In March of 2006, Novartis began its efforts, in accordance with the Agreement.  Compl. ¶ 24. Plaintiff's sales representatives made a total of 988 physician calls in the First Quarter, short of the 2179 Minimum Call Volume, established by the Agreement.  Id.  In the second quarter,

---

[1]According to the Complaint, the Agreement,

established a Minimum Call Volume per quarter of 6,250 calls (with a reduction to 2,179 calls for the partial First Quarter ending March 31, 2006 and a reduction to 1,923 calls for the partial Sixth Quarter ending April 30, 2007).  It also established a Minimum Sales Number per quarter of 46 Retisert implants (reduced to 15 implants for the partial Sixth Quarter).

Compl. ¶20.

[2]The Agreement provided that,

[q]uarterly payments to Novartis would be reduced *pro rata* if the number of calls reported by Novartis fell short of the Minimum Call Volume by 10% or more, and would be reduced by 10% if the number of product sales fell below the Minimum Sales Number (First Quarter excluded).

Id.

Novartis' Call Tracking Report indicated a total of 4,669 calls, a number representing 74.7% of the Minimum Call Volume of 6,250 calls.  Compl. ¶ 31.

On August 2, 2006, B&L notified Novartis, by letter, that it was terminating the Agreement.  B&L asserts that its decision was based on an alleged failure to meet call volume and sales goals.  Compl. ¶ 34.  On August 4, 2006, Novartis wrote to B&L, informing them that Novartis "now had records for an additional 92 calls for the quarter, for a total of 4,761 calls ..." Compl. ¶ 36.  Thereafter, B&L requested an audit of Novartis' sales calls, and claimed "that a majority of sales during the First and Second Quarters came from Novartis territories that were vacant, had new hires that were not yet on territory, or came from accounts not called on by Novartis."  Compl. ¶ 37.

On August 17, 2006, Novartis ceased its promotion of Retisert.  Compl. ¶ 39.  In an attempt to resolve this dispute, representatives of the two companies met in Tampa, Florida on August 30, 2006.  At that meeting, B&L reiterated its grounds for termination, and also alleged that Novartis failed to meet its sales goals for the First Quarter.  Compl. ¶ 40.

B&L wired $425,670.44 to Novartis, on September 8, 2006, as full and final payment for Novartis' services under the Agreement.  B&L explained its calculation of the amount, stating that payment for the Second Quarter was reduced by 25.3%, based on 4,669 calls made, and further reduced by 10%, based on B&L's contention that less than 46 sales were attributable to Novartis.  Payment due for the Third Quarter was prorated, using a termination date of August 3, 2006.  Compl. ¶ 42.

On November 7, 2006, B&L wrote to Novartis explaining that B&L would not give credit to Novartis for certain sales of Retisert, made during the contract period, because B&L had

contacted customers who claimed not to have had any contact with the Novartis sales force. Compl. ¶¶ 42-44.

Novartis filed a Complaint in this matter in the United States District Court for the District of New Jersey, on December 12, 2007.  This Court has diversity jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a); there is true diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

In its Complaint, Novartis alleges: (I) anticipatory breach of contract, (II) breach of the implied covenant of good faith and fair dealing, (III) breach of the confidentiality provisions of the contract, (IV) misappropriation of confidential information, (V) defamation, and (VI) tortious interference with prospective economic advantage.  Compl. ¶¶ 48-79.

On March 5, 2008, Defendants moved to dismiss Counts II, IV, V, and VI of the Complaint, for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) and L. Civ. R. 7.1.

## II.   STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, ---U.S. ----, ----, 127 S.Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Twombly, 127 S.Ct. at 1964-65 (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the

4

speculative level on the assumption that all of the complaint's allegations are true."  Id. at 1965.

When deciding a Rule 12 (b)(6) motion to dismiss, a court is required to accept, as true, all allegations in the complaint and all resulting reasonable inferences.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See Morse v. Lower Merion School District, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist. See FED. R. CIV. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46, abrogated on other grounds by Twombly, 127 S.Ct. 1955.  "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1357.  "[A] 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (quoting Shaw v. Digital Equip. Corp., 82 F.3d

1194, 1220 (1st Cir. 1996)).[3]

## III.   CHOICE-OF-LAW ANALYSIS

The parties agree that New York law governs the Agreement and any disputes related to it.  <u>See</u> Defendant's Brief in Support of its Motion to Dismiss, ("Def. Moving Br."), p. 4; <u>see also</u> Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss ("Pl. Opp. Br."), p. 12 n.1.[4] Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and misappropriation of confidential information constitute disputes arising out of the Agreement.[5] Thus, Plaintiff's contract claims (for purposes of this motion, Counts II & IV) are governed by New York law.

There is also no dispute that New Jersey law is properly applied to Plaintiff's tort claims–defamation and tortious interference with prospective economic advantage, as pled.  A

---

[3]Plaintiff attaches a copy of the Agreement to its Complaint as Exhibit A.  The Agreement is integral to, and explicitly relied upon in, the Complaint and the parties' submissions concerning the instant motion.  This Court will, therefore, consider the Agreement in resolving Defendant's motion.

[4]New York law is also appropriately applied to this action as New York bears a substantial relationship to the parties and New York law does not appear to conflict with any fundamental public policy.  <u>See</u> <u>Nuzzi v. Aupaircare, Inc.</u>, No. 07-3968, 2008 WL 108896, *2 (D.N.J. March 3, 1993) ("In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state.  Under New Jersey law [ ], a choice of law provision will not be honored: (1) if the state chosen has no substantial relationship to the parties or the transaction [ ]; or (2) application of the law chosen would conflict with a fundamental public policy of a state having a greater interest in a determination of a particular issue and [the law] of such state would be applicable in the absence of the choice of law provision under the governmental-interest analysis.")

[5]While Plaintiff alleges as a tort claim, misappropriation of confidential information, Plaintiff's claim sounds in contract, as it recasts an earlier pled contract claim.  <u>See</u> <u>infra</u> Section III.

district court sitting in diversity jurisdiction over state law claims applies the choice-of-law rules of the forum in which it sits, in this case, New Jersey.  See Warner v. Auberge Gray Rocks Inn, Ltee., 827 F.2d 938, 939-40 (3d Cir. 1987) (quoting Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)).

New Jersey employs the "governmental-interest" choice-of-law test for tort claims, applying the law of "the state with the greatest interest in governing the particular issue" in the underlying litigation.  See Marks v. Struble, 347 F. Supp. 2d 136, 142 (D.N.J. 2004) (citing Veazey v. Doremus, 103 N.J. 244, 248 (1986)).  Under this test, a court first must consider whether a conflict exists between the laws of the interested jurisdictions.  See Marks, 347 F. Supp. 2d at 142.  If an actual conflict exists, the court then must "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties."  See id.

Where an examination of the various state laws lead to the same outcome, New Jersey's conflict of law rules permit this Court to resolve the case without choosing between the laws of various states.  See Rohm & Haas Co. v. Adco Chem. Co., 689 F.2d 424, 429 (3d Cir. 1982); see also Marks, 347 F. Supp. 2d at 141-42.  Therefore, a determination must be made, as to whether an actual conflict exists regarding Plaintiff's claims for defamation and tortious interference with prospective economic advantage.

This Court concludes that there is no conflict between the laws of New York and New Jersey,[6] regarding defamation and tortious interference with prospective economic advantage.

_____

[6]The Complaint does not indicate where B&L is alleged to have committed its tortious acts.  Rather, the Complaint only references Plaintiff's place of business, New Jersey, and Defendant's place of business, New York.  Thus, for purposes of choice-of-law analysis, this

See, e.g., Treppel v. Biovail Corp., No. 03-3002, 2004 WL 2339759 at *7-8 (S.D.N.Y. Oct.15, 2004) (finding the law of defamation and tortious interference sufficiently similar in New York and New Jersey, as to conclude no conflict exists).  Thus, in the interest of judicial economy, this Court will apply New Jersey law, the law considered by the parties in their submissions.

## II.    THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Novartis fails to state a claim for breach of the implied covenant of good faith and fair dealing.  New York, generally, does not recognize separate causes of action for breach of contract and breach of the implied covenant good faith and fair dealing.  Every express contract implies a duty of good faith.  Gordon v. Nationwide Mut. Ins. Co., 30 N.Y. 2d 427, 437 (1972).  However, a cause of action for breach of the implied covenant of good faith and fair dealing exists only "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement."  Fourth Branch Assoc. Mechanicville v. Niagara Mohawk Power Corp., 235 A.D. 2d 962, 965 (3d Dep't 1997) (quoting Jaffe v. Paramount Commc'ns Inc., 222 A.D. 2d 17, 22-23 (1st Dep't 1996).

Plaintiff alleges no additional or distinct facts on which to base an independent claim for breach of the implied covenant of good faith and fair dealing.  In fact, Count II duplicates Count I with the addition of two allegations, not essential to Novartis' claim: 1) B&L terminated the Agreement without convening a meeting of the Steering Committee; and 2) B&L's justification for termination was inconsistent with the parties' course of dealing and B&L representations to Novartis.  These allegations relate only to the underlying breach of contract claim, and Novartis'

---

Court considers the laws of both of these states.

arguments as to the propriety of B&L's termination.  These allegations do not create an independent claim for breach of the implied covenant of good faith and fair dealing.  This claim is dismissed.

### III.    MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

Plaintiff's fourth cause of action for misappropriation of confidential information, similarly, fails as a matter of law.  Plaintiff's claim for misappropriation of confidential information (Count IV) recasts, as a tort claim, its contract claim for breach of the confidentiality provisions of the contract (Count III).  However, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.  This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract ... "  Clark-Fitzpatrick, Inc., v. Long Island R.R. Co., 70 N.Y. 2d 382, 389 (1987).

In Count III of its Complaint, Novartis alleges that, "since its termination of the Agreement B&L has used and continues to use confidential and proprietary business information of Novartis concerning the ophthalmology/retinal community, in violation of Section 8.1 of the Agreement."  Compl. ¶ 59.  Immediately thereafter, in Count IV of its Complaint, Novartis alleges that, "B&L's use of Novartis' confidential and proprietary business information constitutes the misappropriation of trade secrets and confidential information in violation of common law principles."  Compl. ¶ 63.  Plaintiff alleges no additional violation of a legal duty, giving rise to tort liability, independent of the contractual obligations of the parties.

Novartis bases its contract claim on the comprehensive Confidentiality Provision, Section 8.1 of the Agreement, which  provides, in relevant part,

[T]he parties may disclose to each other confidential and proprietary information,

9

including without limitation, material or information relating to any present and future products ... research, development, technical information, financial records, sales data, personnel information, trade secrets, business plans and operations, know-how, or communications that each party treats as confidential, whether written, oral, graphic, electromagnetic or in any other form, including, but not limited to, formulas, data models, protocols, techniques, methods (including sales methods), testing results, computer programs, and any other information, whether similar or dissimilar to the foregoing ...

Compl., Ex. A, p. 13.

Novartis argues that its interest in protecting the confidentiality of its business information existed before it entered into the Co-Promotion Agreement with B&L, and continues to exist, independent of the Agreement. Thus, Novartis asserts, B&L's use of Novartis' confidential information, constitutes a separate tort of misappropriation. The Confidentiality Provision, however, clearly delineates, the obligations of the parties regarding *all* shared confidential information.

The unambiguous language of Section 8.1 contains a comprehensive definition of confidential information, which includes Novartis' "independently developed" network of business contacts. The Confidentiality Provision, thus, supplants Novartis' common law ability to pursue a claim of misappropriation, on the facts alleged, and gives rise to the vehicle, through which the parties may bring *contract* claims for perceived breaches.

Novartis fails to allege any additional action on the part of B&L, independent of the actions alleged to have been in breach of the Confidentiality Provision, that would give rise to a separate claim for the tort of misappropriation.[7] As a result, Count IV of the Complaint must be

---

[7]In its moving brief, Defendant argues that Novartis' misappropriation claim recasts the claim for breach of the confidentiality provisions of the contract, in an "effort to seek damages contractually precluded by Section 6.6 of the Agreement." Def. Moving Br., p. 7. While this Court agrees that Novartis' tort claim for misappropriation may not proceed in conjunction with

dismissed.

## IV.   DEFAMATION

Novartis also fails to state a claim for defamation.  A plaintiff must satisfy each of the following factors to bring a successful claim for defamation, under New Jersey law: "(1) that the defendant made a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to persons other than the plaintiff; and (5) fault." Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998) (citing Feggans v. Billington, 291 N.J. Super. 382, 390-1 (App. Div. 1996)).  A claim for defamation "must be plead (sic) with particularity and thus must set forth the facts identifying the defamatory statements, their utterer, and their publication." Zoneraich v. Overlook Hosp., 212 N.J. Super. 83, 101 (App. Div. 1986), cert. denied,107 N.J. 32 (1986) .  "A plaintiff can bolster a defamation cause of action through discovery but not [ ] file a conclusory complaint to find out if one exists." Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739 (1989) (internal quotations omitted).

> Plaintiff's fifth cause of action for defamation provides in relevant part:
>
> Upon information and belief, subsequent to its termination of the Agreement B&L contacted customers to whom sales of Retisert were made in an attempt to substantiate its claims that Novartis had no involvement in particular sales.  Upon information and belief, B&L has represented to such customers, directly or by implication, that Novartis is falsely taking credit for the sales in question ... Novartis has never taken credit for any Retisert sale for which it was not entitled to credit under the parties' Agreement.  Any statements by B&L implying otherwise were false.  The statements made by B&L to Retisert customers concerning Novartis' claims to credit for particular sales were made with actual knowledge that the statements were false ... As a result of the false statements

_____

its contract claims, this Court expresses no opinion on the merits of either of Plaintiff's contract claims, Counts I and III.

made by B&L to its customers ... Novartis has been defamed in its business
reputation and has suffered damage.

Compl. ¶¶ 67-68, 71-73.

Plaintiff notes that "[t]here would be no reason for Retisert customers to provide B&L
with information that Novartis sales representatives did not make contact with them unless B&L
had expressly asked them whether Novartis was involved in a sale."  Pl. Opp. Br., pp. 22-23.
Novartis contends that B&L's customer inquiry into Novartis' involvement in sales of Retisert,
constitutes defamation.  Novartis argues that such customers could reasonably "infer from B&L's
inquiry, that Novartis [ ] was falsely taking credit for sales they did not make."  Id., p. 23.

Novartis fails to set forth any of the facts required to plead a claim for defamation.
Specifically, Novartis fails to allege by whom, or to whom, the allegedly defamatory statements
were made, what words were uttered, or when the statements were made.  Furthermore, Novartis
does not allege the substance of any defamatory statement made by B&L.  Nor does Plaintiff
provide any support for its argument that B&L's inquiry, and any resulting inferences on the part
of B&L customers, constitute defamation.  While this Court construes the Complaint in the light
most favorable to Plaintiff, here Novartis requests too great a leap.

Plaintiff's brief fails to remedy the Complaint's dearth of required specificity.  See Pl.
Opp. Br., p. 24 ("Novartis must pursue discovery from B&L as to the identities of all persons it
contacted concerning Novartis' involvement in Retisert sales in order to assess the damage that
has been done to its business and to flesh out the particulars of its defamation claims.")
However, Novartis argues that its complaint is sufficient, and will likely be supported by
evidence, if Novartis is allowed additional discovery.  While "a plaintiff can bolster a defamation

12

cause of action through discovery, [a plaintiff cannot] file a conclusory complaint to find out if

one exists." Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739 (1989) (internal

quotations omitted).  Plaintiff has not established a claim for defamation in its pleadings and may

not embark on a fishing expedition to repair its pleading deficiencies.[8]

## V. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

Plaintiff also fails to state a claim for tortious interference with prospective economic

advantage.  To state a claim for tortious interference with prospective economic advantage, a

plaintiff must allege: (1) it had a continuing or prospective economic relationship or reasonable

expectation of economic advantage; (2) the defendant knew of the relationship or expectation; (3)

the interference and harm inflicted were done intentionally and with "malice," that is conduct

that is wrongful and without justification or excuse; (4) if not for the interference, it was

reasonably probable that plaintiff would have realized the economic advantage; and (5) the

---

[8]The cases that Novartis cites to in support of its claim, Printing Mart-Morristown and
Kotok Build. v. Charvine Co., 183 N.J. Super. 101 (Law Div. 1981), are inapposite.  In the
instant action, plaintiff fails to focus upon the actual import of Printing Mart, i.e., that, "[a]
plaintiff can bolster a defamation cause of action through discovery, *but not* [ ] *file a conclusory
complaint to find out if one exists*."  116 N.J. at 768 (emphasis added).   In Printing Mart, the
New Jersey Supreme Court only allowed defamation claims to proceed where the plaintiff,
Printing Mart, specifically identified seven defendant employees as the source of the defamatory
statements.  Id. at 739.  Unlike Novartis' Complaint, Printing Mart's pleadings also alleged
exactly what defamatory statements were made by defendants: "that plaintiffs were ripping off a
client, that plaintiffs were not qualified to do the work for defendant Sharp ... and that plaintiffs
did unreasonably-priced, inadequate work ...".  Id. at 45.

Novartis also fails to extract the relevant holding from Kotok, that, while a "verbatim
transcription" of the alleged defamation is unnecessary, some factual pleading of the statements
made is required.  See 183 N.J. Super. at 105-6  In that case, the New Jersey Superior Court
granted plaintiff's motion for summary judgment, where counter-claim defendants failed to
allege specific defamatory statements, but rather, only alleged generally, that plaintiff had spoken
of defendant "in slanderous and vile names ...".  Id. at 103.

plaintiff was injured as a result of defendant's conduct.  See Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 186 (3d Cir. 1992) (citing Printing Mart, 116 N.J. at 751-52); see also Varela v. Hammond, Inc., 94 F.3d 842, 848 (3d Cir. 1996).

Under New Jersey law, a plaintiff's speculative claim of lost business, if unsupported by facts showing an existing or reasonably prospective economic or contractual relationship, does not suffice.  See e.g., Lucas Indus. Inc.,  v.Kendiesel, Inc., No. 93-4480, 1995 WL 350050, *8-9 (D.N.J. June 9, 1995) (citing Fineman, 980 F.2d at 195).  At a minimum, a plaintiff must allege at "least allege specific prospective contracts that were interfered with."  Id., at *9; cf. Advanced Power Sys., Inc., v. Hi-Tech Sys., Inc., 801 F. Supp. 1450, 1459 (E.D. Pa. 1992) ("Even at the pleading stage, a plaintiff may not rest a claim ... on a mere hope that additional contracts or customers would have been forthcoming ... The complaint must allege facts that ... would give rise to a reasonable probability that particular anticipated contracts would have been entered into.").

In the instant action, Novartis fails to articulate what particular economic advantage or contract was lost to them, as a result of B&L's alleged interference.  In connection with this claim, Plaintiff does not identify one physician, company, or other entity, with whom it currently does business, or has the reasonable expectation of doing business in the future.  Plaintiff concedes that the Complaint does not allege "any specific contract" or economic advantage lost by virtue of B&L's alleged interference.  See Pl. Opp. Br., p. 30.  Novartis only alleges that B&L interfered with Novartis' future ability to sell pharmaceutical products to an undefined and indefinite group, which Plaintiff labels, "the ophthalmic/retinal community."  See id.; see also Compl. ¶¶ 75-76.

14

Nonetheless, Novartis urges this Court to accept its deficient pleading, and allow Plaintiff to conduct discovery to determine whether Defendant has, in fact, disturbed Plaintiff's expectation of economic advantage.  Novartis provides no legal support for its request, and this Court finds none.

At the pleading stage, Novartis must allege an injury that is more concrete than lost business of unknown, unsolicited, or hypothetical customers.  Novartis fails to plead such facts. As a result, B&L's motion to dismiss Novartis' claim for tortious interference with prospective economic advantage must be granted.

## VI.   CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Counts II, IV, V, and VI of the Complaint is GRANTED.


Date: November 12, 2008

                                         S/Joseph A. Greenaway, Jr.
                                        JOSEPH A. GREENAWAY, JR., U.S.D.J.

15